The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Kevin Eugene HOPKINS,
Defendant–Appellee.

No. 88SA435.

Supreme Court of Colorado,
En Banc.

May 22, 1989.

Kurt P. Schulke, Dist. Atty., Joseph F. Bennett, Chief Deputy Dist. Atty., Robyn J. Hamilton, Deputy Dist. Atty., Eagle, for plaintiff-appellant.

Fredric B. Butler, Eagle, for defendant-appellee.

Chief Justice QUINN delivered the Opinion of the Court.

In this interlocutory appeal the People challenge an order suppressing the defendant's custodial statements and various items of stolen property taken by him in two burglaries. We conclude that the district court applied an erroneous legal standard in suppressing the challenged evidence. We accordingly reverse the order of suppression and remand the case for further proceedings.

I.

The defendant, Kevin Eugene Hopkins, was charged in the District Court of Eagle County with two counts of burglary, two counts of theft, and two counts of criminal mischief, all of which occurred between August 3 and 4, 1988, in Eagle County, Colorado. After entering a not guilty plea to the charges, the defendant filed a motion to suppress a custodial statement made by him to law enforcement officers on the basis that he was not adequately advised of his constitutional rights prior to making the statement and also to suppress a second statement and various items of personal property seized by the officers as a result of the prior custodial statement.

A suppression hearing was conducted by the district court on November 17, 1988, at which the following facts were established. On August 3 and 4, 1988, two townhouses in Beaver Creek, Colorado, were broken

into and various items were stolen from the dwellings. Deputy Sheriffs Zabroski and Everding investigated the burglaries and learned that the defendant had been working as a cleaning person at or around the time of the crimes. Deputy Zabroski was aware that the defendant's former roommate had been involved in some suspicious checkwriting and credit card use and that there also was an outstanding arrest warrant for the defendant for fraud by check. Zabroski contacted the defendant by telephone and requested him to come to the sheriff's office. The defendant, a twenty-eight year old high school graduate, arrived at the sheriff's office during the afternoon of August 12, 1988. After a brief discussion with the defendant concerning the check and credit card matters relating to the defendant's roommate, Deputy Zabroski turned the discussion to the burglaries and at 3:45 p.m. advised the defendant orally and in writing as follows:

> You have the right to remain silent.
> Anything you say can and will be used against you in a court of law.
> You have the right to talk to a lawyer and have him present with you while you are being questioned.
> If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish one.

The defendant acknowledged in writing that he understood each of his rights and that he was willing to waive those rights by making a statement to the officer. The defendant denied any knowledge or involvement in the burglaries and, pursuant to Zabroski's request, signed a written authorization for the officers to search his automobile and his residence.

After searching the defendant's vehicle and finding no stolen property, the officers drove the defendant to his residence. Upon their arrival, Deputy Zabroski asked the defendant if he was still aware of his rights. The defendant stated that he was and that he knew what he had signed. While at the residence Deputy Everding discovered a video cassette recorder which matched the description of one of the items stolen in the burglaries. When asked about the recorder, the defendant again denied knowledge of the burglaries.

While still at the defendant's residence, Deputy Zabroski informed the defendant that there was a warrant for his arrest on a charge of fraud by check and that Deputy Everding was going to handcuff him. The defendant stated, "We're going to have to make a stop." When Deputy Zabroski asked, "For what?" the defendant replied, "For the rest of the stuff." Zabroski asked the defendant, "[D]id you do it?" to which the defendant responded, "Yes."

The two deputies, with the defendant directing, drove to a creek bed where they recovered the remaining items taken from the townhouses. At approximately 6:45 p.m. the defendant, while in the sheriff's car near the creek bed, wrote out a statement which was prefaced by the following language:

> I am giving this statement of my own free will after having been advised of my rights to remain silent, to have a lawyer, to make no self-incriminating statements, and understand no police agent can make any promise of leniency or favors.

In his written statement the defendant confessed to taking various items from the townhouses, including a video cassette recorder and a television set, and hiding them near the creek bed.[1]

The district court found, in pertinent part, that approximately two hours after being advised of his *Miranda* rights, the defendant, while at his home with the officers, made a voluntary statement to Deputy Zabroski that "[w]e're going to have to

---

[1]. Testimony at the suppression hearing indicated that the defendant made an incriminating statement to Deputy Everding when he was taken to the sheriff's office after giving the written statement at the creek bed. The district court, however, failed to determine whether this statement was constitutionally admissible, and we do not pass on that issue here. In addition, the testimony at the suppression hearing indicated that the defendant, three days after his arrest and while still in custody, gave a videotaped confession to the officers. At the suppression hearing, however, the prosecution agreed that this statement should be suppressed, since the videotaped confession was not preceded by any additional advisement of the defendant's rights.

make a stop" before returning to the sheriff's office, and that Deputy Zabroski then interrogated the defendant by asking him questions. The court ruled that it was incumbent upon the prosecution to prove by clear and convincing evidence that the defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights when he responded to Deputy Zabroski's questions. Applying the clear and convincing standard of proof, the court concluded that since the *Miranda* advisement two hours previously was "in somewhat vague terms," the defendant did not knowingly, intelligently, and voluntarily waive his *Miranda* rights in responding to Zabroski's questions. The court accordingly suppressed the responses made by the defendant at his home to Deputy Zabroski's questions, and also suppressed the defendant's subsequent written confession and the items of stolen property recovered from the creek bed as the fruits of the unlawful interrogation.

The People filed this interlocutory appeal pursuant to C.A.R. 4.1, claiming that the district court erred in requiring the prosecution to establish a valid *Miranda* waiver by clear and convincing evidence.

## II.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court promulgated procedural safeguards to protect the constitutional rights of a person subjected to custodial police interrogation. *Miranda* holds that prior to any custodial interrogation "the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U.S. at 444, 86 S.Ct. at 1612. A suspect who invokes his right to counsel after being advised of his rights is not subject to further interrogation until counsel is made available to him, unless the suspect himself "initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981). If the suspect invokes his right to silence and not his right to confer with an attorney, further interrogation is permissible only under circumstances when the resumption of questioning is consistent with the scrupulous observance of the suspect's right to cut off questioning. *Michigan v. Mosley*, 423 U.S. 96, 102–04, 96 S.Ct. 321, 325–27, 46 L.Ed.2d 313 (1975); *People v. Quezada*, 731 P.2d 730, 734 (Colo.1987).

The *Miranda* warnings need not be a precise incantation of the language contained in the *Miranda* opinion. *California v. Prysock*, 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981). What is required is that the suspect be adequately informed that he has a right not to say anything, that what he does say can be used against him in court, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to questioning if he so desires. *Miranda*, 384 U.S. at 479, 86 S.Ct. at 1630; *see Prysock*, 453 U.S. at 360, 101 S.Ct. at 2809; *People v. Gilmer*, 182 Colo. 96, 100, 511 P.2d 494, 496 (1973). A suspect may waive these rights as long as the waiver is knowingly, intelligently, and voluntarily made. *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612. The inquiry into whether a suspect has validly waived his *Miranda* rights involves two distinct dimensions:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness, both of the nature of the right being abandoned and the consequences of the decision to abandon it.

*Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986). To be valid, a *Miranda* waiver need not be express, but may be inferred from the actions and words of the person interrogated. *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979).

Following the *Miranda* decision, there was some uncertainty with respect to the

burden of proof applicable to establish a waiver of *Miranda* rights. Since the *Miranda* opinion stated that "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel," 384 U.S. at 475, 86 S.Ct. at 1628, our prior decisions imposed on the prosecution the burden of establishing a *Miranda* waiver by clear and convincing evidence. *E.g., People v. Connelly,* 702 P.2d 722, 729 (Colo.1985), *rev'd sub nom. Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *People v. Pierson,* 670 P.2d 770, 777 (Colo. 1983); *People v. Fish,* 660 P.2d 505, 508 (Colo.1983); *People v. Lowe,* 200 Colo. 470, 476, 616 P.2d 118, 123 (1980). In *Colorado v. Connelly,* however, the United States Supreme Court made clear that the prosecution need only prove a *Miranda* waiver by a preponderance of the evidence. 479 U.S. at 168, 107 S.Ct. at 522. In so holding, the Court reasoned that "[i]f, as we held in *Lego v. Twomey,* [404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972) ] the voluntariness of a confession need be established only by a preponderance of the evidence, then a waiver of the auxiliary protections established in *Miranda* should require no higher burden of proof." 479 U.S. at 169, 107 S.Ct. at 523.

The validity of a *Miranda* waiver must be resolved on the basis of the totality of circumstances surrounding the custodial interrogation. *Burbine,* 475 U.S. at 421, 106 S.Ct. at 1140; *Fare v. Michael C.,* 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197 (1979); *Pierson,* 670 P.2d at 775. One factor bearing on the validity of a *Miranda* waiver is the lapse of time between an initial *Miranda* advisement and any subsequent interrogation. *People v. Chase,* 719 P.2d 718, 721 (Colo.1986). "While the better practice is for an interrogating officer to advise an accused of his rights before each interrogation, repeated warnings are not indispensable to a finding that an accused validly waived his privilege against self-incrimination and his right to counsel." *Id.* In addition to the time interval between advisement and interrogation, other factors relevant to the issue of waiver include: whether the defendant or the interrogating officer initiated the interview; whether and to what extent the interrogating officer reminded the defendant of his rights prior to the interrogation by asking him if he recalled his rights, understood them, or wanted an attorney; the clarity and form of the defendant's acknowledgement and waiver, if any; and the background and experience of the defendant in connection with the criminal justice system. *Id.* In situations involving an initial *Miranda* advisement and waiver followed by a later interrogation not preceded by another *Miranda* advisement, the ultimate question "is whether, considering the totality of circumstances, the defendant was sufficiently aware of the continuing nature of his constitutional rights as to render any subsequent statement the result of a knowing, intelligent, and voluntary waiver of those rights." *Id.*

If a custodial statement is obtained from a suspect without a valid waiver of *Miranda* rights, then any evidence obtained by the police as the direct result of the constitutional violation must also be suppressed, unless the prosecution establishes that this same evidence would inevitably have been discovered, *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), is sufficiently attenuated from the initial interrogation to permit its admission at trial, *United States v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978), or was obtained from a source independent of the illegality, *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

### III.

The defendant in this case made no claim that the statements made by him to Deputy Zabroski at the defendant's home were obtained as a result of any governmental coercion or overreaching. Nor did the defendant predicate his suppression motion on any claim that in the course of custodial interrogation he invoked his privilege against self-incrimination or his right to counsel but that the officers failed to honor

his invocation of rights. Rather, the central issue at the suppression hearing was whether the defendant validly waived his *Miranda* rights prior to the brief interrogation at his residence approximately two hours after having been previously advised of those rights at the station house. There is no question that in resolving that issue the district court erred by imposing on the prosecution the burden of proving a *Miranda* waiver by clear and convincing evidence.

■ The prosecution's burden in establishing a valid *Miranda* waiver is to prove the waiver only by a preponderance of the evidence. *Connelly*, 479 U.S. at 168, 107 S.Ct. at 522. The incorrect standard of proof applied by the district court in this case requires that the suppression ruling be reversed and that the case be remanded to the district court for reconsideration of the suppression motion under the appropriate preponderance of the evidence standard.

■ Since this case is being returned to the district court for reconsideration, we believe it appropriate to comment briefly on two aspects of the suppression ruling. which will most likely confront the court on remand. We refer first to the court's statement that the *Miranda* advisement was given "in somewhat vague terms." Although we cannot determine the extent to which the court's view of the contents of the *Miranda* advisement was determinative of the ultimate resolution of the suppression motion, we point out here that "no talismanic incantation" of *Miranda* rights is required to satisfy the strictures of that case. *Prysock*, 453 U.S. at 359, 101 S.Ct. at 2808. A *Miranda* advisement is adequate as long as it conveys to the suspect a clear and understandable warning that he has a right to remain silent, that anything he says can be used against him in court, that he has a right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. *Miranda*, 383 U.S. at 479, 86 S.Ct. at 1630. Second, although we cannot be certain from the record, there is some indication that the district court might have been of the view that the officers were required to readvise the defendant of his *Miranda* rights on every occasion on which they questioned him. While the lapse of time between an initial *Miranda* advisement and any subsequent interrogation is certainly an important factor for a court to consider in determining the validity of a *Miranda* waiver, there is no categorical constitutional requirement that *Miranda* warnings must be repeated before every interrogation in order for a suspect to validly waive his *Miranda* rights. *See Chase*, 719 P.2d at 721.

On remand, the district court must determine whether it is satisfied by a preponderance of the evidence that the defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights at the initial station house interrogation. If not so satisfied, then the court should grant the defendant's motion to suppress. If, however, the court is satisfied by a preponderance of the evidence that the defendant validly waived his *Miranda* rights at the initial station house interrogation, the court must then determine whether the defendant was sufficiently aware of the continuing nature of his constitutional rights when he made a statement at his residence approximately two hours after the *Miranda* waiver and at the creek bed approximately three hours after the *Miranda* waiver. If the court determines that the defendant was not sufficiently aware of the continuing nature of his *Miranda* rights when he made either of those statements, the court should suppress such statement and any evidence directly derived therefrom. On the other hand, if the court is satisfied, again by a preponderance of the evidence, that the defendant validly waived his *Miranda* rights in making these statements, the court should deny the motion to suppress. In resolving the suppression motion on remand, the court retains discretion to permit the parties to offer additional evidence.

The suppression ruling is accordingly reversed and the case is remanded to the

district court for further proceedings consistent with the views herein expressed.

