8 P.3d 435 (1999)
The PEOPLE of the State of Colorado, Plaintiff-Appellant,
v.
In the Interest of J.L.M., Juvenile-Appellee,
and concerning N.H., Respondent-Appellee.
No. 99SA100.
Supreme Court of Colorado, En Banc.
September 13, 1999.
*436 Robert S. Grant, District Attorney, Seventeenth Judicial District, Michael J. Milne, Senior Deputy District Attorney, Brighton, Colorado, Attorneys for Plaintiff-Appellant.
No Appearance on Behalf of Juvenile-Appellee.
Justice RICE delivered the Opinion of the Court.
In this interlocutory appeal pursuant to C.A.R. 4.1, the People seek reversal of the trial court's suppression of statements made by a juvenile during the course of a custodial interrogation. The juvenile moved for suppression of his statements to police on the grounds that the statements were taken in violation of his constitutional rights. The trial court agreed, holding that the prosecution could not use the statements in its case-in-chief, as the record did not reflect that the juvenile had waived the rights afforded to him under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), prior to the interrogation. As we find that the totality of the circumstances demonstrates that the juvenile's waiver of his Miranda rights was knowing, voluntary, and intelligent, we now reverse and remand for further proceedings.

I. FACTS AND PROCEEDINGS BELOW
On September 11, 1998, Sergeant Clint Tweden and Detective Terry Miles of the Adams County Sheriff's Department detained and interrogated J.M., a juvenile, in connection with an assault that had occurred earlier that evening. The juvenile's mother, N.H., was present throughout the course of the interview. The written transcript of the interview reveals that prior to asking J.M. questions regarding the alleged assault, Sergeant Tweden engaged in the following dialogue with the juvenile and his mother:
Tweden: .... [J.M.], before we start this, I need to advise you of your rights. Okay. But first of all, do you read, write, and understand the English language? Okay, I need you to indicate yes there for me.
....
Tweden: Okay, before I ask any questions, before I ask you any questions you *437 should understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to an attorney for advice before I ask you any questions and have an attorney with you during questioning. If you can not afford an attorney one will be provided for you before questioning. These rights are continuing rights and you may choose to exercise them at any time. Do you understand each of those rights? Can you tell me what, what I just said?
J.M. (Juvenile): That I can have a lawyer if I want to. If I can't afford one, you guys will provide me with one.
Tweden: Well, we won't provide it but you can get one provided for you.
....
Tweden: This next statement, it says, having read this statement of my rights, I understand what my rights are. I'm willing to answer questions and discuss the facts without an attorney present. I understand and know what I am doing. No promises and no threats have been made to gain my cooperation. If you want to talk to me, I need you to sign there. If you want an attorney, we'll end the interview and that will be it. What we're looking at is a second-degree assault. [The victim] has got a stab wound to the right lung.
N.H. (Mother): But he doesn't know who did it.
Tweden: No, he doesn't. And that's what we want to find out tonight.
Mother: I'd like to too.
Tweden: Okay, my understanding is you, you want to talk to us without an attorney present at this time?
Mother: Yeah, I don't see no problem.
Tweden: Okay. And keep in mind you can stop the interview if you want.
Mother: Yeah. I mean I would like to know the truth too, you know.
At the suppression hearing, Sergeant Tweden testified that following this discussion of the juvenile's rights, the juvenile signed the written waiver form. The transcript reflects that Sergeant Tweden then asked the juvenile, "Okay ..., why don't you tell me what happened?" The juvenile immediately related his version of the events that led up to the assault in question. During the course of the twenty-minute interview that followed, the juvenile admitted to being involved in an altercation with the victim, but denied stabbing him with a knife.
Approximately one hour and twenty minutes after the initial interview, Sergeant Tweden interviewed the juvenile again. At the beginning of the second interview, Sergeant Tweden informed the juvenile that he was still "under advisement" and that his "rights still appl[ied]." Tweden proceeded to question the juvenile for twelve minutes, during which time the juvenile made several inculpatory statements. Among these statements was his admission that he had used a knife during the altercation with the victim and had hidden that knife in his sister's bedroom. The juvenile's mother gave consent to a police search of her home, during which the juvenile's knife was discovered in his sister's bedroom.
Prior to trial, the juvenile moved to suppress all of the statements he made to police during the September 11 interviews. However, the juvenile's motion did not enumerate the specific grounds upon which he based his claim that his statements were taken in violation of his constitutional rights. At the suppression hearing, the People called Sergeant Tweden as their first and only witness. As the defense prepared to present the testimony of its witness, the juvenile's mother, the trial court interrupted the proceedings and ruled, sua sponte, that the juvenile had not waived his Miranda rights. The court based its holding on the fact that the written transcript of the interview revealed that the juvenile had not made an express oral waiver of his Miranda rights. This interlocutory appeal followed.

II. ANALYSIS
An accused's statement made during the course of custodial interrogation is inadmissible unless it is provided pursuant to a valid Miranda waiver. Miranda, 384 U.S. at 444, 86 S.Ct. 1602; see People v. Owens, *438 969 P.2d 704, 706.[1] When an objection is raised to the introduction of an incriminating statement on the basis that law enforcement officials obtained the statement in violation of Miranda, the People have the burden of proving by a preponderance of the evidence that the statement was made after a knowing, voluntary, and intelligent waiver of Miranda rights. See People v. Mejia-Mendoza, 965 P.2d 777, 780 (Colo.1998).
In order to determine whether a knowing, voluntary, and intelligent waiver occurred, courts must examine the totality of the circumstances surrounding the custodial interrogation. See id. Only if the totality of the circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that Miranda rights have been validly waived. See Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986).
Among the factors to be considered in a review of the totality of the circumstances surrounding a Miranda waiver are the following: the time between advisement and interrogation; whether the defendant or the interrogating officer initiated the interview; whether and to what extent the interrogating officer reminded the defendant of his rights prior to the interrogation by asking him if he recalled his rights, understood them, or wanted an attorney; the clarity and form of the defendant's acknowledgement and waiver, if any; and the background and experience of the defendant in connection with the criminal justice system. See People v. Hopkins, 774 P.2d 849, 852 (Colo.1989). Furthermore, a valid Miranda waiver need not be express, but may be inferred from the actions and words of the person interrogated. See id. at 851. An express written or oral waiver of Miranda rights is not indispensable to a finding of a knowing, voluntary, and intelligent waiver. See North Carolina v. Butler, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979).
When ruling on a motion to suppress a defendant's statement, the trial court must make findings of historical fact and then apply legal standards to those facts. See People v. Valdez, 969 P.2d 208, 211 (Colo. 1998). While the trial court's findings of fact are entitled to deference and will only be overturned if they are not supported by competent evidence, the trial court's ultimate legal conclusion as to the validity of a waiver is subject to de novo review on appeal. See Owens, 969 P.2d at 706.
We now turn to an application of these legal standards to this case. In reviewing the record, we find no evidence that the trial court analyzed the totality of the circumstances surrounding the juvenile's interrogation before concluding that he did not waive his Miranda rights. Instead, the trial court held that the juvenile's waiver was not valid because it was not in the form of an express oral statement. However, in so holding, the court applied an erroneous legal standard in its review of the validity of the juvenile's waiver. As discussed above, an express oral statement is not required in *439 order for a Miranda waiver to withstand the totality-of-the-circumstances test. See Butler, 441 U.S. at 373, 99 S.Ct. 1755.
Our review of the totality of the circumstances surrounding the juvenile's interrogation reveals that his waiver, although not made in the form of an express oral statement, was knowing, voluntary, and intelligent. The undisputed facts established at the suppression hearing are as follows. After advising the juvenile of his rights at length, Sergeant Tweden made the following statement: "If you want to talk to me, I need [you] to sign there. If you want an attorney, we'll end the interview and that will be it." The juvenile was presented with a typewritten form explaining each of his rights under Miranda. He wrote, "Yes," in response to the typewritten question, "Do you understand each of your rights?" and signed the bottom of the form. Furthermore, Sergeant Tweden orally advised the juvenile of his complete Miranda rights, and asked the juvenile to repeat those rights back to him. The juvenile's mother was present throughout the advisement and agreed with the juvenile's decision to sign the waiver form. Finally, the interrogation began immediately after the advisement occurred.
Accordingly, we conclude that the totality of the circumstances surrounding the juvenile's waiver demonstrates that his waiver was knowing, voluntary, and intelligent. Therefore, we reverse the trial court's order of suppression.

III. CONCLUSION
We conclude that the juvenile's waiver of his Miranda rights was knowing, voluntary, and intelligent. Accordingly, we reverse the suppression order of the trial court and remand the case for further proceedings consistent with this opinion.
NOTES
[1] Statements taken during custodial interrogation of a juvenile are governed by both constitutional protections and section 19-2-511(1), 6 C.R.S. (1998) which provides:

No statements or admissions of a juvenile made as a result of the custodial interrogation of such juvenile by a law enforcement official concerning delinquent acts alleged to have been committed by the juvenile shall be admissible in evidence against such juvenile unless a parent, guardian, or legal or physical custodian of the juvenile was present at such interrogation and the juvenile and his or her parent, guardian, or legal or physical custodian were advised of the juvenile's right to remain silent and that any statements made may be used against him or her in a court of law, of his or her right to the presence of an attorney during such interrogation, and of his or her right to have counsel appointed if he or she so requests at the time of the interrogation....
In the instant case, the juvenile's challenge to the admissibility of his statements was limited to the validity of his Miranda waiver. The juvenile did not argue that his statements were taken in violation of the preceding statutory section or that his statements to police were coerced. See Nicholas v. People, 973 P.2d 1213 (Colo.1999) (holding no statements of a juvenile resulting from custodial interrogation should be admissible unless a parent is present and both the juvenile and parent are advised of the juvenile's Miranda rights). Accordingly, the trial court's suppression order and our review are limited to the issue of whether the juvenile's waiver of his Miranda rights was voluntary, knowing, and intelligent.