STATE OF NEBRASKA, APPELLEE, V.
SAMUEL Q. SMITH, APPELLANT.
693 N.W.2d 587

Filed March 8, 2005.    No. A-04-691.

Thomas C. Riley, Douglas County Public Defender, and Timothy P. Burns for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

INBODY, Chief Judge, and IRWIN and CARLSON, Judges.

CARLSON, Judge.

## INTRODUCTION

Samuel Q. Smith appeals from his convictions and sentences for second degree murder and use of a deadly weapon to commit a felony. The trial court sentenced Smith to 40 to 60 years' imprisonment on the second degree murder conviction and 5 to 10 years' imprisonment on the weapon conviction. Smith is to serve the sentences consecutively, with credit for 391 days served. On appeal, Smith claims that the district court erred in overruling his motion to suppress and in failing to grant a mistrial. For the reasons set forth below, we affirm.

## BACKGROUND

The record shows that on April 6, 2003, Robert Chromy was shot and killed after chasing three shoplifters, one of whom was Smith, from a gas station in Omaha. After the shoplifters ran to Smith's vehicle, Chromy got in his vehicle and attempted to stop the shoplifters from leaving the scene. Smith then got out of his vehicle and shot Chromy multiple times.

On April 17, 2003, Smith was arrested pursuant to a warrant and transported to the police station. At the station, Officer Alan Reyes advised Smith of his *Miranda* rights, and Smith indicated that he wanted his lawyer present. At that point, Reyes left the interview room to conduct another interview. Reyes did not attempt to contact Smith's attorney.

The record shows that approximately 25 minutes after Reyes left the room, another officer came into the room and asked Smith for his mother's telephone number, given that Smith was 17 years old and still a minor at the time. After Smith gave the officer his mother's telephone number, Smith asked to speak to his mother. The officer told Smith, " 'Not right now, when we get you booked in you can talk to her.' " It was at this point that Smith asked to see

Reyes again. After Reyes came back into the room, he immediately advised Smith again of his *Miranda* rights, and Smith then indicated that he wanted to speak to Reyes without Smith's attorney present.

Smith admitted to Reyes that Smith was the driver of the vehicle Chromy tried to block and that when Chromy did not move his vehicle, Smith got out of his vehicle and shot at Chromy's vehicle. Smith denied that he meant to hurt or kill Chromy and testified that he shot at Chromy's vehicle with the sole purpose of getting Chromy to move.

Subsequently, the State charged Smith with second degree murder and use of a deadly weapon to commit a felony. Prior to trial, Smith filed a motion to suppress the statements he had made to Reyes, and the trial court overruled Smith's motion.

Trial began on March 22, 2004. At trial, Smith's statements to Reyes were allowed over Smith's objection. After the jury was seated and heard a half day of testimony, juror T.R. was brought before the judge after informing the bailiff that she was not sure that she could be an impartial juror. T.R. stated that this was so because Smith was not being tried by a jury of his peers, given that the jury did not reflect either his age group or his race. T.R. also stated that Smith "look[ed] so sad and scared and pathetic over there." T.R. wavered as to whether she could be a fair and impartial juror and stated at one point that her feelings of sympathy for Smith were pretty overwhelming. T.R. also stated that she had made her feelings known to two of the other jurors and that she had thought she should speak to the bailiff.

The court dismissed T.R. from the jury, and Smith then requested that the court declare a mistrial. The court initially granted Smith's motion. The State asked the court to reconsider its ruling, and the court then questioned the other two jurors whom T.R. had spoken to, in order to determine whether T.R.'s comments affected their ability to be fair and impartial. The first juror, a female, stated that T.R. had spoken to her earlier that morning about T.R.'s concerns and that the juror told T.R. to take her concerns to the bailiff. This juror stated that there was nothing about T.R.'s remarks that would impair the juror's ability to be fair and impartial. The second juror, one of the two alternate jurors, stated that he had spoken to T.R. that morning but that he

did not talk to T.R. about the trial and did not overhear anything about the makeup of the jury.

The district court found that both of the jurors T.R. spoke to could be fair and impartial and that Smith would not be prejudiced if they were allowed to remain on the jury. The court then changed its ruling on the mistrial and overruled Smith's motion for mistrial. The court then, in order to replace the dismissed juror, placed the names of the two alternate jurors in a container and drew out the name of one of the alternates to take the place of T.R. After the new juror was seated, the trial resumed. The record shows that the new juror was not the alternate juror T.R. had spoken to.

After trial, the jury convicted Smith of murder in the second degree and use of a deadly weapon to commit a felony. On May 12, 2004, the trial court sentenced Smith to 40 to 60 years' imprisonment for second degree murder and 5 to 10 years' imprisonment for use of a deadly weapon to commit a felony. The trial court ordered that Smith serve his sentences consecutively, with credit for 391 days served. Smith appeals.

## ASSIGNMENTS OF ERROR

On appeal, Smith argues that the district court (1) committed reversible error by denying his motion to suppress statements obtained from him in violation of his right to counsel guaranteed to him by the Fifth and Sixth Amendments to the U.S. Constitution and article I, § 11, of the Nebraska Constitution, and (2) abused its discretion by denying his motion for mistrial on the discovery of possible juror bias after the commencement of trial.

## ANALYSIS

*Motion to Suppress.*

Smith argues that the trial court erred when it overruled his motion to suppress statements he made to Reyes after requesting counsel. Specifically, Smith told Reyes that he was the one who shot at Chromy and that he did not mean to injure Chromy, but, rather, shot at Chromy solely because he wanted Chromy to move his vehicle. The State was allowed to introduce this testimony at trial after the court overruled Smith's motion to suppress these statements.

■ Typically, the trial court's factual findings relating to a motion to suppress are reviewed for clear error, but the issue of whether a defendant has waived his or her *Miranda* rights knowingly and intelligently is reviewed de novo. See *State v. Fernando-Granados*, 268 Neb. 290, 682 N.W.2d 266 (2004). See, also, *People v. Platt*, 81 P.3d 1060 (Colo. 2004); *State v. Jaco*, 130 Idaho 870, 949 P.2d 1077 (Idaho App. 1997); *State v. Lockhart*, 830 A.2d 433 (Me. 2003); *State v. Dominguez-Ramirez*, 563 N.W.2d 245 (Minn. 1997); *State v. Barrera*, 130 N.M. 227, 22 P.3d 1177 (2001); *State v. Ramirez-Garcia*, 141 Ohio App. 3d 185, 750 N.E.2d 634 (2001). Given that the facts in the instant case are undisputed, we determine de novo whether the evidence shows that Smith knowingly and intelligently waived his *Miranda* rights.

■ In the instant case, the record shows that after Reyes read Smith his *Miranda* rights the first time, Smith requested that his counsel be called before proceeding. When an accused has expressed his desire to deal with the police only through counsel, he is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. *State v. Smith*, 242 Neb. 296, 494 N.W.2d 558 (1993).

The record shows that approximately 25 minutes after Reyes left the room, another officer came into the room and asked Smith for his mother's telephone number, given that Smith was 17 years old and still a minor at the time. After Smith gave the officer his mother's telephone number, Smith asked to speak to his mother and was told, " 'Not right now, when we get you booked in you can talk to her.' " It was at this point that Smith asked to see Reyes again. After Reyes came back into the room, he immediately advised Smith again of his *Miranda* rights, and Smith then indicated that he wanted to speak to Reyes without Smith's attorney present.

Smith argues that his statements to Reyes ought to have been suppressed, because the second officer "clearly initiated the further conversation or exchange with Smith." Brief for appellant at 10. Smith does not argue that he did not understand his rights because of his age. The trial court overruled Smith's motion to suppress, stating:

The Court finds that [Smith] re-initiated the conversation, that he was re-Mirandized prior to examination, including informing him that he had a right to have an attorney present during questioning. It is clear to this Court that [Smith] understood and expressly waived such rights prior to the interrogation and that he voluntarily, intelligently, knowingly, and intentionally relinquished both his Fifth and Sixth Amendment rights to have counsel present during this interview. Statements made by [Smith] were in response to questioning and there is no benefit offered in exchange for the statements.

We conclude that the State met its burden of proving that Smith waived his privilege against self-incrimination and his right to counsel. Thus, the trial court did not err in overruling Smith's motion to suppress and in allowing the State to enter Smith's statements into evidence at trial.

## Mistrial and Disqualification of Juror.

■ Smith also argues that the trial court erred in failing to declare a mistrial when one of the jurors was dismissed because she could not be fair and impartial. The decision whether to grant a motion for mistrial is within the discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Shipps*, 265 Neb. 342, 656 N.W.2d 622 (2003).

In support of Smith's position, he cites *State v. Clifford*, 204 Neb. 41, 281 N.W.2d 223 (1979), in which the defendant faced charges of driving while intoxicated and operating a motor vehicle to avoid arrest. In that case, after the jury had heard evidence for a few hours, a juror contacted the judge about the juror's ability to fairly and impartially carry out his duties as a juror. The court then conducted a hearing at which the juror stated that before trial began, he did not realize that he and his wife were well acquainted with members of the defendant's family. The juror stated that because of such acquaintance, he did not think that he could be fair and impartial.

The State then offered to stipulate to the case's being tried by the remaining jurors, but the defendant would not agree to this. The State then moved for a mistrial without prejudice, and the defendant moved for a mistrial with prejudice. The court declared

a mistrial without prejudice. On appeal, the Nebraska Supreme Court stated, "The disqualification of the juror in the present case and the declaration of a mistrial due to the juror's bias were manifestly necessary to serve the ends of justice." *Id.* at 45, 281 N.W.2d at 226.

Smith cites *Clifford* for the blanket proposition that the court must grant a mistrial in the event that a juror is dismissed because of his or her inability to be fair or impartial. We disagree. In a more recent case, *State v. Krutilek*, 254 Neb. 11, 15, 573 N.W.2d 771, 775 (1998), the Nebraska Supreme Court stated, "A juror is not required to be excused from a jury and a mistrial not be declared when the juror is able to decide the case fairly and impartially." In other words, the trial court in that case made the decision not to excuse or discharge the juror, after an in-chambers determination of whether the juror could be fair and impartial. In our case, as opposed to *Clifford* or *Krutilek*, we have a juror who cannot be impartial and the trial court utilized the applicable statute to continue the trial, rather than declaring a mistrial. Neb. Rev. Stat. § 29-2004 (Cum. Supp. 2004) states in part:

> If, before the final submission of the cause a regular juror dies or is discharged, the court shall order the alternate juror, if there is but one, to take his or her place in the jury box. If there are two alternate jurors the court shall select one by lot, who shall then take his or her place in the jury box.

This case appears to be a matter of first impression because the trial court replaced a juror pursuant to § 29-2004 after finding that the juror could not be fair and impartial. The use of an alternate juror in the instant case presents a different factual situation than those situations set out in *Clifford* and *Krutilek*. In *Clifford*, there apparently were no alternates, so that a replacement of the juror was not available. In *Krutilek*, the questioned juror was determined to be fair and impartial, so that replacement of a juror was not at issue. In the instant case, the record shows that the trial court chose to dismiss T.R. as a juror and select an alternate juror to take T.R.'s place. The trial court did so after interviewing the two other jurors T.R. mentioned speaking to. Upon examination, the first juror stated that T.R. voiced her concerns to the juror but that T.R.'s comments would not change the juror's ability to be fair and impartial. The other juror had no recollection of any

comments that T.R. made regarding the composition of the jury. Therefore, in the instant case, the trial court did not err in replacing T.R. with an alternate juror rather than declaring a mistrial. The trial court's decision was clearly discretionary, and on this record, we cannot find that the district court abused its discretion.

## CONCLUSION

After reviewing the record, we conclude that the district court did not commit reversible error by denying Smith's motion to suppress statements obtained from him and that the court did not abuse its discretion by denying Smith's motion for mistrial. For these reasons, Smith's convictions and sentences are affirmed.

AFFIRMED.