**The PEOPLE of the State of Colorado, Plaintiff–Appellant**

v.

**Bruce PLATT, Defendant–Appellee.**

**No. 03SA217.**

Supreme Court of Colorado, En Banc.

Jan. 12, 2004.

---

District Attorney, Denver, Colorado, Attorneys for Plaintiff–Appellant.

David S. Kaplan, State Public Defender, Holly Lucas, Deputy State Public Defender, Denver, Colorado, Attorneys for Defendant–Appellee.

Justice HOBBS delivered the Opinion of the Court.

In this interlocutory appeal, pursuant to section 16–12–102(2), 6 C.R.S. (2002), and C.A.R. 4.1, the prosecution challenges an order of the Denver County District Court granting defendant Bruce Platt's motion to suppress his oral and written statements to the police. With regard to all three statements, the trial court ruled that, as a result of Platt's drug usage, he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights. We reverse the trial court's suppression order with regard to all of his statements to the police.

The trial court failed to evaluate the totality of the circumstances surrounding Platt's *Miranda* waiver; it took only one factor into account, intoxication. The record does not support the trial court's finding and conclusion that Platt did not knowingly, intelligently, and voluntarily waive his *Miranda* rights. Rather, the record demonstrates, under the totality of the circumstances, that Platt voluntarily spoke to the police and made a knowing and intelligent waiver of his rights.

I.

The prosecution charged Platt with Sexual Assault pursuant to section 18–3–402(1)(b), 6 C.R.S. (2002), and Failure to Register as a Sex Offender pursuant to section 18–3–412.5(1)(a), 6 C.R.S. (2002). The charges stemmed from an incident occurring at approximately 3:00 a.m. on December 6, 2002, when Platt allegedly fondled his sleeping housemate, first caressing the outside of her underwear and then digitally penetrating her vagina.

Platt made three separate statements to the police concerning the incident. First, at approximately 4:00 a.m. on December 6, within an hour of the incident, one of the officers who interviewed the alleged victim

A. William Ritter, Jr., District Attorney, Robert J. Whitley, Chief Appellate Deputy

contacted Platt via telephone. During their conversation, Platt admitted that he had sexually assaulted his housemate. He also stated that it was his fourth sexual assault and he was concerned about going to prison for the rest of his life. Platt then agreed to meet the officer in person. Upon meeting, the officer arrested Platt and advised him of his *Miranda* rights.

After arriving with Platt at the police station, approximately 4:30 a.m., the officer advised Platt of his rights a second time. Platt stated that he understood his rights and was not intoxicated. He signed a written advisement form listing his *Miranda* rights. After discussing the events of the assault with the investigating officer orally, a conversation not recorded, Platt made a written statement that consists of two parts: (1) a two-page narrative that Platt wrote, and (2) a five-page question and answer dialogue that the police officer wrote.

A day later, at approximately 9:00 a.m. on December 7, Platt made a third statement, recorded on audiotape, to a different police officer. Contrary to the trial court's conclusion that this statement was not preceded by a *Miranda* advisement, the audiotape clearly reveals that the police advised Platt of his rights before he waived them both orally and in writing:

Q: Your rights are as follows: You have the right to remain silent, okay. Anything you say can be used as evidence against you in court. You have a right to talk to a lawyer before questioning and have him present during questioning.

A: Uh-huh.

Q: If you cannot afford a lawyer, one will be appointed for you without cost to you before questioning.

Do you understand each of these rights I've read to you?

A: Yes.

Q: I signed there saying I did read you your rights. There's your answer that you did understand your rights; you said yes.

Here's the spot where you need to sign saying that the rights were read to you. If you want to read them again, you can; they're right there above your signature.

Okay, now knowing your rights and knowing what you are doing, do you now wish to voluntarily talk with me?

A: Yes.

Q: Okay, go ahead and sign there.

Platt then signed the written advisement form and proceeded to give details about the sexual assault yet again, essentially repeating what he had written the day before and supplying additional detail.

When giving the *Miranda* advisements before the written and the audio-taped statements, the police officers asked Platt whether he was intoxicated. Each time he said he was not, although he told the officer who took the audio-taped interview that he had been smoking marijuana several hours before the sexual assault.

At the suppression hearing, Platt testified that he was under the influence of drugs at the time of the incident, as well as when he made the telephone and the written statements. He said that he was suffering from withdrawal during the audio-taped statement. According to his testimony, during the afternoon and evening before the sexual assault, he had consumed three lines each of cocaine and methamphetamine and smoked three "bowls" of marijuana, two of which were laced with opium.

Assuming the truth of Platt's drug use testimony, which the trial court found to be credible, he ceased ingesting the drugs at midnight and made the telephone statement four hours later and the written statement five to seven hours after the last drug use. He made the audio-taped statement at least thirty-three hours after ingesting the drugs.

The trial court ordered the suppression of all three statements, ruling in toto:

The statements made were not made knowingly, intelligently, and voluntarily. The Court finds the defendant's statements regarding his drug use credible. Prior to making the statements in question, the defendant was under the influence of marijuana, opium, methamphetamine, and cocaine. Having reviewed the Exhibit 2, the Court finds the defendant's statements to have been incoherent, rambling and demonstrative of his lack of under-

standing as a result of the drug usage. The officer knew or should have known from the defendant's rambling statements and demeanor that the defendant was under the influence of drugs and, as a result, unable to understand his *Miranda* rights. Thus, the Court finds that the drugs impaired the defendant's ability to such a degree that the Court cannot say the statements were made knowingly, intelligently, and voluntarily. The defendant's statement contained on the audiotape is also suppressed for the same reasons and additionally, because no *Miranda* advisement was given.

We reverse the suppression order with regard to all of the statements.

## II.

The trial court failed to evaluate the totality of the circumstances surrounding Platt's *Miranda* waiver; it took only one factor into account, intoxication. The record does not support the trial court's finding and conclusion that Platt did not knowingly, intelligently, and voluntarily waive his *Miranda* rights. Rather, the record demonstrates, under the totality of the circumstances, that Platt voluntarily spoke to the police and made a knowing and intelligent waiver of his rights.

### A.

#### Standard of Review

A trial court engages in both factfinding and law application when it rules on a motion to suppress. *People v. Kaiser*, 32 P.3d 480, 483 (Colo.2001). When a trial court determines whether a defendant has validly waived the *Miranda* rights, the court engages in both factfinding and law application. *See People v. Matheny*, 46 P.3d 453, 461 (Colo.2002). Although we defer to the trial court's findings of fact that are supported by competent evidence in the record, *id.* at 462, whether the trial court applied the correct legal standard to the facts established by the record is a mixed question of fact and law we review de novo. A trial court may not reach legal conclusions that are not supported by the record. *People v. Minjarez*, 81 P.3d 348, 355 (Colo.2003).

Accordingly, if competent evidence supports the trial court's findings of fact, we give deference to them; conversely, we set aside findings of fact that are clearly erroneous or unsupported by the record. *Kaiser*, 32 P.3d at 483. We review the trial court's legal conclusions de novo. *People v. Miller*, 75 P.3d 1108, 1111–12 (Colo.2003).

### B.

#### Waiver of Miranda Rights

At the outset of custodial interrogation, the police must issue a *Miranda* advisement to inform a suspect of his or her constitutional rights. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *see also Minjarez*, 81 P.3d at 352. Suspects can waive their rights upon receiving a proper *Miranda* advisement; however, in order to be valid, the waiver must be voluntary, knowing, and intelligent. *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602. A *Miranda* waiver is considered voluntary unless "coercive governmental conduct—whether physical or psychological—played a significant role in inducing the defendant to make the confession or statement." *People v. May*, 859 P.2d 879, 883 (Colo.1993). A waiver is knowing and intelligent when made with full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it. *People v. Hopkins*, 774 P.2d 849, 851 (Colo.1989).

The prosecution must prove the validity of a defendant's waiver by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *Kaiser*, 32 P.3d at 484. Courts evaluate a defendant's waiver of *Miranda* rights based on the totality of the circumstances surrounding the custodial interrogation. *Kaiser*, 32 P.3d at 484. A court is not limited in the number of factors it may consider, and no single factor is determinative. *Minjarez*, 81 P.3d at 353.

In assessing the validity of a *Miranda* waiver, factors a court may consider include, but are not limited to, the following: the time interval between the initial *Miranda* advisement and any subsequent interroga-

tion; whether and to what extent the interrogating officer reminded the defendant of his or her rights prior to the interrogation by asking if the defendant recalled his or her rights, understood them, or wanted an attorney; the clarity and form of the defendant's acknowledgement and waiver, if any; the background and experience of the defendant in connection with the criminal justice system; the defendant's age, experience, education, background, and intelligence; and whether the defendant has any language barrier in understanding the advisement. *Kaiser*, 32 P.3d at 484.

■■■■■ Intoxication, when raised, is also one of the factors the trial court may consider when assessing the validity of a *Miranda* waiver. *People v. Quintana*, 996 P.2d 146, 149 (Colo.App.1999) (disapproved on other grounds by *People v. Harlan*, 8 P.3d 448, 474 (Colo.2000)). Intoxication will render a suspect's waiver involuntary when government conduct causes the intoxication. *See Colorado v. Spring*, 479 U.S. 564, 574, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987); *May*, 859 P.2d at 882–83. When self-induced intoxication is involved, courts examine whether the suspect was so intoxicated that he or she could not have made a knowing and intelligent waiver. *See Spring*, 479 U.S. at 574, 107 S.Ct. 851; *May*, 859 P.2d at 882–83; *People v. Fordyce*, 200 Colo. 153, 156, 612 P.2d 1131, 1134 (1980).

■■■■■ The fact that self-induced intoxication diminishes a defendant's mental faculties does not necessarily invalidate his or her waiver as not being knowing and intelligent. Intoxication will not invalidate an otherwise valid *Miranda* waiver if the suspect was capable of understanding the nature of his or her rights and the ramifications of waiving them. *People v. Cardenas*, 25 P.3d 1258, 1265 (Colo.App.2000).

■■■■■ In considering the intoxication factor, the competence inquiry we have developed in cases involving mental incompetence or language difficulty is pertinent: whether the defendant seemed oriented to his or her surroundings and situation; whether the defendant's answers were responsive and appeared to be the product of a rational thought process; whether the defendant was able to appreciate the seriousness of his or her predicament, including the possibility of being incarcerated; whether the defendant had the foresight to attempt to deceive the police in hopes of avoiding prosecution; whether the defendant expressed remorse for his or her actions; and whether the defendant expressly stated that he or she understood their rights. *Kaiser*, 32 P.3d at 487–89; *People v. Al–Yousif*, 49 P.3d 1165, 1172 (Colo.2002); *People v. Jordan*, 891 P.2d 1010, 1015–16 (Colo.1995); *Quintana*, 996 P.2d at 149.

### C.

### Validity of the *Miranda* Waiver

The trial court erred in suppressing Platt's statements. The telephone statement is admissible; it was both voluntary and non-custodial. With regard to the written and audio-taped statements, the record does not support the trial court's legal conclusion that Platt's waiver was not knowing and intelligent. The trial court improperly suppressed both of these statements.

### 1.

### The Telephone Statement

■■■■■ Police need not give the *Miranda* advisory unless a suspect is subject to custodial interrogation. *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602. Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* When the interrogating officer is not in the physical presence of a suspect, the officer does not exert immediate control over the suspect's actions. *People v. J.C.*, 844 P.2d 1185, 1190 (Colo.1993). Accordingly, a telephone call does not constitute custodial interrogation. *Id.* Statements and confessions received as a result of a non-custodial interrogation are admissible, if they are voluntary. *Id.* at 1189. Contrary to the trial court's conclusion, a statement is not involuntary for reason of intoxication unless government conduct caused the intoxication. *See Spring*,

479 U.S. at 574, 107 S.Ct. 851; *May,* 859 P.2d at 882–83.

■ Here, Platt made the first statement via telephone; no police coercion or government-caused intoxication occurred. This statement was non-custodial, voluntary, and admissible. The trial court erred in suppressing it.

2.

Written and Audio–Taped Statements

■ Platt made the written and audio-taped statements while in police custody following his arrest. Because the police questioning was reasonably likely to elicit an incriminating response, Platt made each of these statements during custodial interrogation. *See People v. Taylor,* 41 P.3d 681, 690 (Colo.2002). Neither statement is admissible unless preceded by a proper *Miranda* advisement and a valid waiver of defendant's rights. When considering recorded statements—whether documentary, audio-taped, or video-taped—the trial and appellate courts are in a similar review position. *Al–Yousif,* 49 P.3d at 1171.

■ Here, the police gave Platt both oral and written *Miranda* advisements shortly before he made the written statement and the audio-taped statement. Each time he stated that he understood his rights and wished to waive them. The trial court made no finding of police coercion, and the record contains no evidence of police coercion. Therefore, Platt made both statements voluntarily. The question is whether Platt's waiver was knowing and intelligent.

■ In assessing the validity of Platt's *Miranda* waiver, the court erred by failing to take into account the totality of the circumstances. Although the trial court found Platt's testimony about his drug use credible—and we defer to that credibility determination—the trial court addressed only the intoxication factor. But, the written and audio-taped statements do not support the trial court's conclusion that Platt's *Miranda* waivers were unknowing and unintelligent in light of Platt's intoxication. To the contrary, the record demonstrates, under a totality of the circumstances, that Platt's *Miranda* waivers with regard to the written and audio-taped statements were both knowing and intelligent.

We now proceed to apply the totality of the circumstances test to Platt's *Miranda* waivers.

With regard to the intoxication factor, the trial court's order states that both the written and audio-taped statements were "incoherent, rambling, and demonstrative of his lack of understanding as a result of the drug usage." We are in the same position as the trial court to review these recorded statements. *See Al–Yousif,* 49 P.3d at 1171. These statements do not support the trial court's finding and conclusion that Platt was so intoxicated he did not understand his rights and the consequences of waiving them.

With regard to the written statement, the record contains un-contradicted evidence that the police officer advised Platt orally and in writing of his *Miranda* rights just prior to this statement; he answered that he understood those rights; he said he was not intoxicated at the time of the oral and signed written advisements; and the officer testified at the suppression hearing that Platt did not appear to be intoxicated at the time he received the *Miranda* advisory. Platt made the written statement five to seven hours after the last drug use. Although his two-part written statement contains misspellings by both Platt and the police officer, Platt lucidly explains in detail how he committed the sexual assault and why:

*Written narrative statement in Platt's handwriting (excerpt):*

I'm deprest and I've know it for some time. For along time I don't know if I'm gay or strat. I don't know who I am. I'm so angree in side it hurts. I don't know how to help my-self. I never, wanted and/or intended to hurt her or any one els. I wasn't looking for or wanted to have a victim. I just wanted to be normal like every body els. After 3 relationships 1 of them being a repeat, being hell. I didn't know how to feel tord women, relationships and my-self. As sorry as I am to say this; I wanted to know if I felt the same way tord women.

I touched [the victim] with my hand and penitrated her with my finger.

*Written question and answer statement in officer's handwriting (excerpt):*

Q. Take away the fact that it was [the victim] & you don't get along—why did you to touch the girl on the couch.

A. I reached out to touch her because I didn't know

Q. Didn't know what

A. When I saw her underware, it didn't cause a reaction. When I was touching & penatrating her I was asking my self questions. Could a woman ever love me & can I make a woman happy. This had nothing to do with [the victim], it was about women.

Q. How long were you touching [the victim]

A. I don't know maybe 2 minutes

Q. What hand did you use

A. Both when I was touching her

Q. What hand did you use to penatrate her

A. Right

Q. How many fingers did you use

A. One

Q. Which one

A. Index. (Held up index finger)

Q: Is there anything you want to add to this statement

A: I want help, I need treatment. I don't want drugs I want to be normal. I know the repercusions. I don't want to go to jail but I know I need help. In the past 6 months my drug use has incrossed when Im high, I don't hurt inside. I don't have any physical pain. Momentorely I am able to forget.

Platt signed all seven pages of the written statement. This statement is coherent, rational, and lucid. It contains a straightforward narrative of the sexual assault, Platt's explanation for making the assault, and his apparent appeal to the police for drug treatment instead of the evident repercussion of possibly going to prison as a repeat sex offender.

The written statement itself demonstrates that Platt comprehended the circumstances of his custody and interrogation, was responsive to the questioning, willingly cooperated in giving detailed answers, had a good recollection of the events surrounding the assault, and was not so intoxicated at the time of the oral and written *Miranda* advisements as to be incapable of understanding his rights and the consequences of waiving them.

■ Likewise, with regard to the audio-taped statement, the record demonstrates that the police advised Platt orally and in writing of his *Miranda* rights just prior to this statement, he answered that he understood those rights, and he said he was not intoxicated at the time of the oral and signed written advisements. Platt made the audio-taped statement at least thirty-three hours after the last drug use. During this statement, Platt pauses after virtually every question to consider the answer; then he responds with details that reaffirm his written statement and adds additional recollection of the events leading up to the assault:

*Audio–Taped Statement (excerpt):*

Q: Okay, so you get there Thursday night?

A: Uh-huh.

Q: Where were you coming from?

A: My friend's house.

. . .

Q: When you get there, who's there or who's not?

A: As far as I know, everybody is there.

. . .

Q: What do you do when you show up, since everyone's sleeping? Do you wake them up, or you want to talk to them? What do you do?

. . .

A: I let myself in—I have a key to the house—I let myself in. Lights were off. I didn't know [the victim] was sleeping on the couch. I turn the light on, I startled her, she woke up. And we both kind of apologized because, you know, when you wake her up, she'll jump at you, you know, due to her past for her being in an abused life and all that.

Platt proceeds to give on the audiotape virtually the same rendition of the sexual assault as he did in the written statement, including the fact that the assault occurred after the victim went back to sleep on the couch, his reasons for the assault, and his desire for drug treatment.

Despite his suppression hearing testimony that he was suffering from drug withdrawal during the audio-taped statement, Platt's answers during the audio-taped interview again reveal a cooperative suspect who makes detailed, coherent, and lucid responses that demonstrate his recall of the events and his motivation for cooperation, to avoid the harsh consequences of being a repeat sex offender.

Contrary to the trial court's conclusion that Platt was so intoxicated that he could not make a knowing and intelligent *Miranda* waiver, Platt was alert and perceptive enough in making the waivers and giving the written and audio-taped statements that he consciously lied about his drug usage in order to avoid additional charges:

*Suppression Hearing Testimony—Direct Examination of Platt by his Attorney (excerpt):*

Q: And you heard [the] Corporal [ ] indicate that he asked you whether you were taking any drugs.

A: Yes.

Q: Do you recall that?

A: Yes.

Q: And he said that you told him that you had not taken any drugs, is that right?

A: Yes.

Q: Why did you lie . . . ?

A: Instantaneous response.

Q: Okay. You just heard [the] Detective [ ] testify he also asked you whether you consumed any drugs, do you recall that?

A: Yes.

Q: And besides telling him that you smoked some marijuana with [your friend], did you tell him that you had done any other drugs?

A: No.

Q: Why did you lie to him?

A: Mitigate my damage. I didn't want to get any more charges.

In summary, the written statement and audio-taped statements do not support the trial court's finding and conclusion that Platt did not comprehend his rights, when advised, and the consequences of waiving them.

The trial court considered only the intoxication factor. A totality of the circumstances analysis of the record in this case reveals a 28–year–old adult who possesses a high school graduation certificate; suffers from no apparent language barrier; has prior experience with the criminal justice system; has been convicted previously of sexual assault; knows that repeat sexual assault can have severe punishment consequences; receives oral and written *Miranda* advisements just before making both the written and audio-taped statements; acknowledges his *Miranda* rights orally and in writing each time; states that he is not intoxicated; does not appear to the officers to be intoxicated; delivers all three of his statements (including the telephone statement) in a responsive, coherent, detailed, and cooperative manner without any evidence of police coercion; and expresses remorse for his actions, apparently hoping to avoid the consequences of being a repeat sex offender and a drug offender.

We conclude that the record does not support the trial court's suppression order. Under a totality of the circumstances, Platt understood the *Miranda* advisements, understood the consequences of waiving his rights, and waived his rights. The waivers are valid.

### III.

### Conclusion

Accordingly, we reverse the trial court's suppression order with regard to all three statements and remand this case for further proceedings consistent with this opinion.