The PEOPLE of the State of Colorado, Plaintiff–Appellant

v.

Travis Lee JEWELL, Defendant–Appellee.

No. 07SA319.

Supreme Court of Colorado, En Banc.

Feb. 4, 2008.

Martin Beeson, District Attorney, Ninth Judicial District, Amy C. Fitch, Deputy District Attorney, Glenwood Springs, CO, Attorneys for Plaintiff–Appellant

The Law Firm of Ted Hess, P.C., Theodore G. Hess, Bill Schubert, Glenwood Springs, CO, Attorneys for Defendant–Appellee.

Justice MARTINEZ delivered the Opinion of the Court.

The People bring this interlocutory appeal pursuant to C.A.R. 4.1 and section 16–12–102(2), C.R.S. (2007), to reverse a trial court's ruling suppressing incriminating statements made immediately after a *Miranda* waiver by Travis Lee Jewell ("Jewell"). The trial court's ruling to suppress the statements was based on its finding that Jewell was too intoxicated to knowingly and intelligently waive his right to remain silent.

We find that the trial court erred when it suppressed Jewell's statements to police immediately following the waiver of his *Miranda* rights. Because the facts do not support the trial court's determination that Jewell's intoxication was so severe that he was demonstrably unable to knowingly and intelligently waive his *Miranda* rights, we reverse the trial court's order suppressing Jewell's incriminating statements.

## I. Facts and Procedural History

On the afternoon of December 16, 2006, officer Brent Baker ("Baker") was patrolling Garfield County Road 210 when he witnessed a white Dodge pickup truck driving at a high

rate of speed. Upon activating his radar, Baker confirmed that the vehicle was traveling forty-one miles per hour in a thirty-mile per hour zone. As Baker turned on his lights and turned to pursue the truck, he heard the vehicle accelerate. Before Baker could catch the truck, it had disappeared over a hill. However, Baker quickly located the vehicle approximately a half-mile later when he found it right-side up in a field, forty feet off the road. The truck appeared to have rolled several times.

When he reached the vehicle, Baker could see that the driver, Jewell, was still in his seat and was conscious. Baker asked Jewell if he was okay and if he had any weapons. Jewell responded that he was uninjured and that he had a gun next to him on the passenger's seat. Baker directed Jewell to keep his hands out the window until backup arrived. Jewell put his hands out the window, but they fell down several times, whereupon Baker directed him to put them back up. On each occasion, Jewell complied for a short period of time before dropping his arms again. When additional officers arrived, Baker asked Jewell if he could exit the car under his own power. Jewell replied that he could. While Baker held Jewell's hands, another officer removed the gun from the passenger's seat. Jewell then exited the car under his own power. Upon exiting, Jewell was placed under arrest.

Baker later testified that Jewell was slurring his words, swaying slightly, and having trouble standing. Baker further testified that Jewell had a strong odor of alcohol and his eyes were bloodshot and watery. Jewell's blood alcohol level was later determined to be .291.

While awaiting the ambulance, Baker advised Jewell of his *Miranda* rights. Jewell listened intently and stated that he understood his rights. Baker then asked Jewell, "With your rights in mind right now, do you wish to talk to me?" Jewell replied that he would talk to Baker. Over the next few minutes, Jewell made several admissions, including that he was "really drunk" at the time of the accident.

At a hearing prior to trial, Jewell testified that his memory of the accident was "blur-ry." He told the court that he was "pretty drunk" and that the accident left him with a closed-head injury from hitting his head. He testified that it was hard to "think straight" about that afternoon. He further testified that he was hung over the day after the accident and that his head continued to hurt for two weeks thereafter. The defense presented no evidence as to the severity of Jewell's head injury. Jewell did not testify that he blacked out after the accident or that his injuries made him unable to understand his *Miranda* rights.

Jewell moved to suppress the incriminating statements made after the arrest, claiming that in light of his extreme intoxication he could not knowingly and intelligently waive his *Miranda* rights. After reciting the officer's version of the facts in making its findings, the court made two rulings. First, it found that Jewell's statements to police immediately after his arrest were voluntary and not induced by coercive government action. Second, the trial court concluded that given his level of intoxication, Jewell could not have acted knowingly or intelligently when he waived his *Miranda* rights. Thus, the court suppressed Jewell's statements because his level of intoxication made it impossible to effectuate a valid *Miranda* waiver. The People brought this interlocutory appeal.

## II. Analysis

■ Upon arrest, an officer must read the *Miranda* advisement to the accused, so the accused is informed of his constitutional rights. *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The accused may then waive his rights upon a proper *Miranda* advisement. *Id.* However, in order to be valid, the waiver must be voluntary, knowing, and intelligent. *Id.* A person makes a knowing and intelligent waiver of *Miranda* rights when he has full awareness of the nature of the right being abandoned and the consequences of its abandonment. *People v. May,* 859 P.2d 879, 883 (Colo.1993); *see also People v. Hopkins,* 774 P.2d 849, 851 (Colo.1989).

■ The only issue on appeal is whether the trial court erred in concluding that Jew-

ell's waiver was invalid because it was not knowingly and intelligently made. In circumstances like this, the People carry the burden of proving the validity of Jewell's knowing and intelligent waiver by a preponderance of the evidence. *Colorado v. Connelly,* 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). The court may consider any relevant factor to make this determination. *People v. Kaiser,* 32 P.3d 480, 484 (Colo.2001). Factors a court customarily considers include, but are not limited to: "the time interval between the initial *Miranda* advisement and any subsequent interrogation; whether and to what extent the interrogating officer reminded the defendant of his or her rights prior to the interrogation by asking if the defendant recalled his or her rights, understood them, or wanted an attorney; the clarity and form of the defendant's acknowledgement and waiver, if any; the background and experience of the defendant in connection with the criminal justice system; the defendant's age, experience, education, background, and intelligence; and whether the defendant has any language barrier in understanding the advisement." *People v. Platt,* 81 P.3d 1060, 1065–66 (Colo. 2004).

In addition to these factors, the defendant's intoxication at the time of the *Miranda* warning is also one of the factors the trial court may consider when assessing the validity of a *Miranda* waiver. *Id.,* 81 P.3d at 1066. Specifically, in cases where, as here, the intoxication is self-induced, the trial court should examine whether the defendant was so intoxicated that he or she could not have made a knowing and intelligent waiver. *May,* 859 P.2d at 882. We have previously found that "[t]he fact that self-induced intoxication diminishes a defendant's mental faculties does not necessarily invalidate his *Miranda* waiver." *Platt,* 81 P.3d at 1066. Intoxication only invalidates an otherwise valid *Miranda* waiver if the court finds through a preponderance of the evidence that the defendant was incapable of understanding the nature of his rights and the ramifications of waiving them. *Id.*

When determining whether intoxication makes a waiver unknowing or unintel-ligent, we consider several factors, including: whether "the defendant seemed oriented to his or her surroundings and situation; whether the defendant's answers were responsive and appeared to be the product of a rational thought process; whether the defendant was able to appreciate the seriousness of his or her predicament, including the possibility of being incarcerated; whether the defendant had the foresight to attempt to deceive the police in hopes of avoiding prosecution; whether the defendant expressed remorse for his or her actions; and whether the defendant expressly stated that he or she understood their rights." *Kaiser,* 32 P.3d at 487–89.

In *Kaiser,* we applied the aforementioned factors to find that a developmentally delayed woman acted knowingly and intelligently when she waived her *Miranda* rights. There, the People demonstrated that the defendant possessed a sufficient understanding of the rights she was waiving. Specifically, after reading the defendant her *Miranda* rights, an officer asked the defendant what "the right to remain silent" meant. She replied that it meant she "didn't have to say anything." Id. at 482. We concluded that this statement showed that she possessed sufficient understanding of her right to remain silent that she could knowingly and intelligently waive it. *Id.*

Similarly, in *Platt,* we applied the factors mentioned in *Kaiser* to find that a defendant's heavy drug use did not make a knowing and intelligent *Miranda* waiver impossible. 81 P.3d at 1063. We held that while the defendant had used drugs in the hours prior to the admissions, he still acted knowingly and intelligently. Id. at 1068. We concluded that based on the coherence of the statements, the defendant's demeanor, the defendant's appreciation of his dire circumstance and the severity of his potential punishment, he understood his constitutional rights when he forfeited them to talk to the officers. Id. at 1069.

Applying these same factors to the present case, we find that despite his level of intoxication and injuries, Jewell exhibited several readily observable characteristics suggesting that he was acting knowingly and intelligent-

ly. For instance, when Baker approached the car and inquired as to Jewell's injuries, Jewell was able to intelligently assess his own physical condition and apprise Baker that he was not hurt. Jewell then proceeded to follow Baker's directions. Jewell advised Baker that he was armed. He raised his hands on command, and exited the car when told to do so. Further, Jewell paid attention while Baker read the *Miranda* warnings. When asked if he understood those rights, Jewell replied that he did. Subsequently, when Baker inquired as to whether Jewell would answer questions, Jewell readily agreed to do so.

When a defendant's actions in waiving his *Miranda* rights demonstrate lucidity and rationality, as illustrated by the factors described in *Kaiser*, we conclude he makes this waiver knowingly and intelligently. Here, Jewell "seemed oriented to his ... surroundings," readily and rationally responded to questions, understood the seriousness of being armed in the presence of the arresting officer, and he "expressly stated that he ... understood" his *Miranda* rights. *Kaiser*, 32 P.3d at 487–89. Because Jewell's actions demonstrate that he was lucid and rational when he waived his right to remain silent, we hold that the trial court erred when it determined that Jewell was too intoxicated to knowingly or intelligently waive his *Miranda* rights.

### III. Conclusion

Because we find that Jewell knowingly and intelligently waived his *Miranda* rights, we reverse the trial court's order suppressing statements made by Jewell immediately following his arrest.