2014 CO 28

**The PEOPLE of the State of Colorado,
Plaintiff–Appellant**

v.

**Jeffrey KNEDLER, Defendant–Appellee.**

**Supreme Court Case No. 13SA292**

Supreme Court of Colorado.

April 28, 2014

Attorneys for Plaintiff–Appellant: George H. Brauchler, District Attorney, Eighteenth Judicial District Susan J. Trout, Senior Deputy District Attorney, Centennial, Colorado

Attorneys for Defendant–Appellee: Douglas K. Wilson, Colorado State Public Defender Michael B. Garlan, Deputy State Public Defender, Centennial, Colorado

JUSTICE HOOD delivered the Opinion of the Court.

¶ 1 In this interlocutory appeal, the People seek reversal of the trial court's order suppressing videotaped statements made by defendant Jeffrey Knedler after he signed a written waiver of his *Miranda* rights. Based on Knedler's extremely high BAC[1] at the time of his waiver, the trial court found the waiver invalid. Because Knedler's waiver was nonetheless knowing and intelligent, we reverse the suppression order.

---

1. BAC means either a person's blood alcohol content, expressed in grams of alcohol per one hundred milliliters of blood, or a person's breath alcohol content, expressed in grams of alcohol per two hundred ten liters of breath. § 42–1–102(8.5), C.R.S. (2013). Knedler's breath alcohol content was measured as part of his intake process in county jail.

## I. Facts and Procedural History

¶ 2 Police officers arrested Jeffrey Knedler for allegedly assaulting two people. Knedler and the victims sometimes lived under a bridge on East Iliff Avenue in Arapahoe County where, the victims claim, Knedler beat both of them with a heavy stick.

¶ 3 Two days after the assault, police officers contacted Knedler at a hair salon where he occasionally stayed. As they approached the salon, the officers observed Knedler drinking from what appeared to be a liquor bottle. He also took a long drink from a can of malt liquor before the officers handcuffed him and placed him in a police car. Investigator Mary Lou Gwaltney, who was present at the scene, asked Knedler if he would talk with her. He agreed but did not want to speak in the police car, so Investigator Gwaltney transported him to police headquarters.

¶ 4 Upon arriving at headquarters, Investigator Gwaltney presented Knedler with a written *Miranda* advisement and read it aloud to him, line by line. Although he stated that he did not have his glasses and therefore could not read, Knedler initialed by each of the numbered rights, signed the advisement and the waiver, and said, "I know my rights." During questioning, Knedler admitted to beating both victims and made numerous incriminating statements.

¶ 5 After the interview, a nurse gave Knedler a preliminary breath test to assess his level of intoxication. Although the nurse reported that Knedler was alert and oriented, she recorded his BAC as .284.[2] Knedler told the nurse that, on average, he drank "one case plus one pint" of alcohol every day.

¶ 6 Based primarily on his level of intoxication, Knedler moved to suppress on the grounds that his statements were involuntary and the *Miranda* waiver was not knowing and intelligent. The trial court issued a brief bench ruling granting the motion to suppress, finding that the interrogation was "a situation where [Knedler] was intoxicated and one could believe that he was unable to make a rational decision at that time." The court also noted that Knedler was in custody and that the interview occurred in the middle of the day; the court stated that it would have been reasonable to wait until Knedler was less intoxicated before questioning him.

¶ 7 The People now appeal the trial court's suppression order under section 16–12–102(1), C.R.S. (2013), and C.A.R. 4.1.

## II. Analysis

¶ 8 We begin with the standard of review for suppression cases and then discuss the law governing *Miranda* waivers. We next consider whether Knedler's waiver was knowing and intelligent and conclude that Knedler validly waived his rights despite being intoxicated.

### A. Standard of Review

¶ 9 When reviewing a suppression order, we defer to the trial court's findings of fact if they are supported by competent evidence in the record. *People v. Quezada,* 731 P.2d 730, 732 (Colo.1987). We review the trial court's ultimate legal conclusion de novo and reverse if the court applied an erroneous legal standard or came to a conclusion unsupported by the factual findings. *People v. Syrie,* 101 P.3d 219, 222 (Colo.2004). It is unnecessary to remand the case for further evidentiary findings if review of the record reveals no disputed factual issues. *People v. Owens,* 969 P.2d 704, 708 (Colo.1999).

### B. *Miranda* Waivers

¶ 10 The Fifth Amendment requires police to advise criminal suspects of their constitutional rights before any custodial interrogation. *Miranda v. Arizona,* 384 U.S. 436, 471, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). If a defendant waives his or her rights and agrees to speak with law enforcement, the validity of the waiver depends on two elements: (1) whether the waiver was voluntary, meaning that it was free from governmental coercion; and (2) whether it was knowingly and intelligently made with full awareness of the nature of the right and

---

2. The General Assembly has established a permissible inference that a defendant is under the influence of alcohol if the defendant's BAC is .08 or more. § 42–4–1301(6)(a)(III), C.R.S. (2013). Here, Knedler's BAC was almost four times higher than this level.

the consequences of its abandonment. *People v. Ferguson,* 227 P.3d 510, 513 (Colo. 2010); *People v. Jewell,* 175 P.3d 103, 105 (Colo.2008). The People carry the burden of proving the validity of the waiver by a preponderance of the evidence. *Colorado v. Connelly,* 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

¶ 11 The trial court did not consider the voluntariness of Knedler's waiver in its suppression order, nor does Knedler defend the order on that ground. Consequently, we focus only on whether Knedler's waiver was knowing and intelligent.

### C. Knedler's Waiver Was Knowing and Intelligent

¶ 12 Knedler contends that his *Miranda* waiver was not knowing and intelligent because he was intoxicated at the time of the waiver, and he asserts that the trial court correctly considered the totality of the circumstances before suppressing his statements. The People argue that the trial court erred by basing its conclusion solely on Knedler's degree of intoxication. We agree with the People.

#### 1. Totality of the Circumstances

¶ 13 When evaluating whether a *Miranda* waiver was knowing and intelligent, we consider the totality of the circumstances, including, but not limited to, the following factors: (1) the length of time between the initial *Miranda* advisement and the interrogation; (2) whether the defendant or the interrogating officer initiated the interview; (3) whether and to what extent the interrogating officer reminded the defendant of his or her rights before the interrogation; (4) the clarity and form of the defendant's acknowledgment and waiver; (5) the defendant's background and experience with the criminal justice system; and (6) any language barriers and the defendant's age, experience, education, background, and intelligence. *People v. Kaiser,* 32 P.3d 480, 484 (Colo.2001).

¶ 14 In addition to these general factors, a defendant's level of intoxication at the time of the *Miranda* advisement is rele-vant to a waiver's validity. *Jewell,* 175 P.3d at 106. In *People v. Platt,* we articulated a set of subfactors to assess a defendant's competence in cases involving intoxication, based on the competency inquiry developed in cases involving mental impairment or language difficulty. 81 P.3d 1060, 1066 (Colo.2004). These *"Platt* factors" include: (1) whether the defendant was oriented to his or her surroundings and situation; (2) whether the defendant's answers were the responsive product of a rational thought process; (3) whether the defendant was able to appreciate the seriousness of his or her situation and the possibility of incarceration; (4) whether the defendant had the foresight to attempt to deceive the police to avoid prosecution; (5) whether the defendant expressed remorse for his or her actions; and (6) whether the defendant expressly stated that he or she understood his or her rights. *Id.* The purpose of this inquiry is to examine whether the defendant was so intoxicated that he or she could not have made a knowing and intelligent waiver. *Id.*

¶ 15 However, intoxication alone will not invalidate an otherwise valid *Miranda* waiver if the defendant was able to understand the nature of his or her rights and the ramifications of waiving them. *Id.* For example, the defendant in *Platt* claimed that he was under the influence of drugs when he initially waived his *Miranda* rights. The trial court agreed and suppressed. In reversing the suppression, this court held that the defendant's heavy drug use did not make a valid waiver impossible. *Id.*

¶ 16 More recently, in *Jewell,* we unanimously reversed a trial court's order suppressing a statement when a defendant's blood alcohol level was approximately .291 at the time he waived his *Miranda* rights. 175 P.3d 103. Despite his very high BAC, the totality of the circumstances amply demonstrated that the defendant knew what he was doing and understood what was happening. *Id.* at 105–07. Shortly before he waived his rights, he was oriented to his surroundings, gave rational answers to questions, and conveyed concern that he had a handgun in his vehicle when officers approached him. *Id.* Consequently, his high BAC—roughly the

same as that at issue here—did not render his waiver invalid.

¶ 17 As we explained in *Platt*, "[t]he fact that self-induced intoxication diminishes a defendant's mental faculties does not necessarily invalidate his or her waiver as not being knowing and intelligent." 81 P.3d at 1066. Thus, a trial court errs if it fails to consider the totality of the circumstances and bases its decision to suppress a defendant's statements solely on intoxication. *Id.* at 1067. "When a defendant's actions in waiving his *Miranda* rights demonstrate lucidity and rationality ... we conclude he makes this waiver knowingly and intelligently." *Jewell*, 175 P.3d at 107; *see also United States v. Smith*, 606 F.3d 1270, 1276–77 (10th Cir.2010) (defendant's waiver of *Miranda* rights was voluntary, knowing, and intelligent, despite his consumption of a substantial amount of alcohol and his use of cocaine and marijuana the night before and the morning of the confession, because other evidence showed that he was lucid and rational when he waived).

## 2. Application

¶ 18 Considering the totality of the circumstances, the record here demonstrates that Knedler had sufficient awareness of his Fifth Amendment rights and the consequences of relinquishing them when he signed the acknowledgment and waiver.

¶ 19 We address the general factors for assessing whether a waiver is knowing and intelligent before turning to the *Platt* factors: (1) questioning began immediately after Knedler signed the waiver; (2) Knedler agreed to speak with Investigator Gwaltney while he was in the police car; at his request, she initiated the interview when they arrived at headquarters; (3) Investigator Gwaltney did not remind Knedler of his rights during the interrogation, but the interview lasted only forty-five minutes; (4) in a quiet room, Investigator Gwaltney slowly and methodically presented the advisement and waiver line by line as Knedler followed along and then initialed next to each line indicating that he understood each right; he also signed a statement that he understood his rights and signed the waiver portion, agreeing to answer questions without a lawyer present; (5) Knedler indicated that he had extensive experience with the criminal justice system, including incarceration in correctional facilities in Sterling, Walsenburg, Trinidad, and Four Mile; this suggests that he was familiar with his rights; and (6) Knedler appeared to have no difficulty with English. When considered together, these general factors tend to show that Knedler's decision to waive his rights was informed and deliberate.

¶ 20 Because Knedler alleges that his degree of intoxication rendered his waiver invalid, we now turn to the *Platt* factors and address each in turn: (1) Knedler did not appear disoriented or confused by his surroundings; (2) although he slurred his words, Knedler's responses were quick, lucid, and rationally related to Investigator Gwaltney's questions; (3) Knedler conveyed his understanding of the seriousness of his predicament, by repeatedly stating that he was going to prison for the rest of his life and by asking what his charges would be; (4) Knedler did not seem to try to deceive his interviewer; he appeared resigned to prosecution and willing to take responsibility for the attack; (5) Knedler expressed remorse for his actions, crying at times and repeating that he was sorry; and (6) Knedler stated "I know my rights" before answering any questions, and he initialed and signed the waiver.

¶ 21 Applying all of these factors in a totality of the circumstances analysis leads us to conclude that Knedler knowingly and intelligently waived his rights: he received and signed the waiver immediately before questioning; he had experience with the criminal justice system; he was oriented to his surroundings; he answered questions directly and cogently; he understood that his statements were inculpatory; he felt remorse; and he expressly stated that he understood his rights, both orally and in writing.

¶ 22 It is true that Knedler's preliminary breath test of .284 suggests extreme intoxication, but his level of intoxication must be considered along with the totality of the circumstances, including his admission that he drank "one case plus one pint" of alcohol every day. The ability to function after con-

suming large amounts of alcohol varies on an individual basis. *See, e.g., Blackwell v. State,* 259 Ga. 810, 388 S.E.2d 515, 517 (1990) (finding waiver valid, despite blood alcohol level of .32, due to evidence that the defendant had a high tolerance of alcohol from habitual drinking).

¶ 23 Relying only on blood or breath alcohol content to evaluate whether a defendant can knowingly and intelligently waive *Miranda* rights would also create a line-drawing problem. If Knedler's .284 result is simply too high, then what is not? .2? .1? The law requires trial judges confronting this issue to focus on the cognitive ability that different people actually exhibit at the time they are asked to waive their rights. Chemical analysis of blood or breath alcohol content alone is not sufficient for a court to conclude that a defendant's waiver was not knowing and intelligent.

¶ 24 In sum, the trial court erred by failing to consider the totality of the circumstances, instead focusing solely on Knedler's level of intoxication. We conclude that Knedler adequately understood the nature of his rights and the ramifications of waiving them.

### III. Conclusion

¶ 25 We hold that Knedler validly waived his *Miranda* rights. His waiver was knowing and intelligent. We reverse the trial court's suppression order and remand for further proceedings.