23CA0301 Peo v Brown 11-06-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0301
Larimer County District Court No. 21CR2183
Honorable Sarah B. Cure, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Adrian Lawrence Brown,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE HARRIS
Schock and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 6, 2025

Philip J. Weiser, Attorney General, Frank R. Lawson, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Julieanne Farchione, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    A jury found defendant, Adrian Lawrence Brown, guilty of second degree assault of a police officer and obstructing a peace officer.

¶ 2    On appeal, Brown challenges the trial court's ruling excluding evidence of his blood alcohol content (BAC) and the sufficiency of the evidence supporting his convictions. We affirm.

I.    Background

¶ 3    Loveland police officer Zach Noble and two other officers were dispatched to a disturbance at an apartment complex involving a woman and Brown. Brown was arrested after failing to comply with officers' attempts to detain him.

¶ 4    Due to his noncompliance throughout the course of his detention and arrest, the officers put Brown in handcuffs and a leg restraint called a hobble. The officers did not remove either restraint at any time during the events relevant to this appeal.

¶ 5    The officers' testimony and their body camera footage established that Brown was highly intoxicated the evening he was arrested. Brown was also verbally combative toward the officers throughout the evening.

¶ 6    Due to Brown's severe intoxication and some injuries he sustained that evening, the officers took him to the hospital for evaluation and clearance before booking him into the county jail. As part of the medical evaluation process, hospital staff drew Brown's blood to determine his BAC.  Officer Noble testified at Brown's preliminary hearing that hospital staff told him Brown's BAC was 0.33.

¶ 7    Brown still showed several signs of significant intoxication when he was released from the hospital.  The three officers transported him by wheelchair to a patrol car, with his legs still in restraints.

¶ 8    Once at the patrol car, two officers lifted Brown into the back seat while the third went around to the other side to pull Brown further inside the car.  As Officer Noble attempted to put Brown's legs inside the vehicle, Brown said, "Come on, cupcake," then pulled his knees in towards his chest and extended his legs, kicking Officer Noble in the chest.  Officer Noble was wearing a ballistics vest at the time of the kick but said that he experienced slight pain. According to Officer Noble, right after Brown kicked him, Brown said, "Fuck you, bitch."

¶ 9    As relevant to this appeal, the prosecution charged Brown with second and third degree assault of a peace officer, resisting arrest, and obstructing a peace officer.[1]

¶ 10    Before trial, the prosecution moved for an order requiring expert disclosures if Brown intended to introduce BAC evidence at trial, asserting that "any correlation between the defendant's blood and/or breath alcohol content to a specific level of intoxication is expert testimony." The court granted the motion. Brown subsequently endorsed two emergency medicine doctors as expert witnesses. When the defense did not file expert disclosures despite receiving two extensions of time to do so, the prosecution filed a motion in limine to exclude any defense expert testimony. In response, Brown struck the two emergency medicine experts from his witness list, mooting the prosecution's motion.

¶ 11    During jury selection, defense counsel's extensive voir dire concerning a voluntary intoxication defense prompted the prosecution to renew its motion to exclude evidence of Brown's

---

[1] Brown was charged with other crimes in connection with the initial disturbance at the apartment and his conduct at the hospital, but the trial court granted Brown's motion for judgment of acquittal on one charge and the jury acquitted him of two others.

BAC.  The prosecution argued that the BAC evidence was hearsay, called for an expert opinion, and was inadmissible pursuant to the court's prior order concerning expert disclosures.  Defense counsel argued that the BAC was not offered for its truth, so it was not hearsay, and that BAC evidence is typically admitted through a lay witness.  The trial court sided with the prosecution and excluded the BAC evidence "based on [the need for] expert testimony."

¶ 12    At trial, Brown elicited undisputed evidence of his severe intoxication, and the court gave a voluntary intoxication instruction with respect to the specific intent crimes.  The jury convicted Brown of second degree assault of a police officer and obstruction but acquitted him of third degree assault and resisting arrest.

## II.    Evidentiary Challenge

¶ 13    Brown first contends that the trial court erred by concluding that the BAC test result was inadmissible without expert testimony, a ruling he says impaired his ability to present a voluntary intoxication defense.  We see no basis for reversal.

### A.    Standard of Review

¶ 14    We review a trial court's evidentiary rulings for an abuse of discretion.  *People v. Miller*, 2024 COA 66, ¶ 40.  A court abuses its

4

discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or based on a misapplication of the law. *Id.*

¶ 15    We review a preserved[2] claim of evidentiary error under a harmless error standard. *People v. Ambrose*, 2021 COA 62, ¶ 53. Under this standard, if we conclude that the court erred, we reverse only if the error substantially influenced the verdict or affected the fairness of the trial proceedings. *Hagos v. People*, 2012 CO 63, ¶ 12.

### B.    Exclusion of BAC Evidence

¶ 16    The trial court ruled that because Brown's BAC involved "a lab result," its admission required expert testimony. Brown contends that a BAC result is admissible through lay testimony, and the

---

[2] We note that in the trial court, Brown argued that the BAC evidence was not hearsay because it was offered to show the effect on the officer-listener, not to establish Brown's BAC. On appeal, he has abandoned his effect-on-the-listener theory and now argues that admission of his BAC, *for the truth of the matter asserted,* was critical to support his voluntary intoxication defense. But under the new theory, Officer Noble's testimony that hospital staff relayed Brown's BAC would seem to constitute inadmissible hearsay. *See* CRE 801(c). In light of our resolution of the issue, however, we need not determine whether the evidence was excludable on this basis too.

court's exclusion of the evidence prevented the jury from "fully evaluating [his] voluntary intoxication defense."

¶ 17    We need not decide if the court erred because we conclude that, even if it did, any error was harmless.

¶ 18    In assessing the prejudicial effect of an evidentiary error, we consider a number of factors, including "the overall strength of the state's case, the impact of the improperly . . . excluded evidence on the trier of fact, whether the proffered evidence was cumulative, and the presence of other evidence corroborating or contradicting the point for which the evidence was offered." *People v. Short*, 2018 COA 47, ¶ 55 (quoting *People v. Casias*, 2012 COA 117, ¶ 64).

¶ 19    The jury heard and saw ample evidence of Brown's extreme intoxication to support his voluntary intoxication defense. The officers repeatedly testified to the following indicia of intoxication: Brown smelled strongly of alcohol; he was unsteady on his feet and stumbling; he urinated and defecated himself; his speech was slurred, nonsensical, and incoherent; and he passed out, only waking up when an officer employed a sternum rub on him. The jury also watched portions of the officers' body camera footage corroborating their testimony that Brown was highly intoxicated. In

short, the fact of Brown's severe intoxication was uncontested at trial.

¶ 20    Thus, the BAC evidence was cumulative, and any prejudice resulting from its exclusion was minimal. *See, e.g., People v. Davis*, 218 P.3d 718, 730 (Colo. App. 2008) (any error in excluding cumulative evidence is harmless), *overruled in part on other grounds by, People v. Vanderpauye*, 2023 CO 42, ¶ 36 n.11.

¶ 21    Additionally, defense counsel argued the voluntary intoxication defense in closing argument and the jury was instructed on it. The overwhelming evidence of Brown's intoxication allowed the jury to fairly consider whether he was too drunk to form the requisite specific intent for certain of the crimes charged. *See People v. Martinez*, 2024 COA 34, ¶ 56 (exclusion of some evidence of the defendant's intoxication was harmless when other evidence of her intoxication allowed the jury to fairly consider the voluntary intoxication defense).

¶ 22    Moreover, as the People point out, the BAC test result standing alone would not have been particularly helpful to the jury in evaluating Brown's voluntary intoxication defense. Brown's BAC did not give rise to any presumption for the jury to consider as it

would have in the vehicular crimes context, *see* § 18-3-106(2)(c), C.R.S. 2025 (establishing that a 0.08 BAC gives rise to a permissible inference the defendant was under the influence of alcohol in vehicular homicide context), nor is a high BAC determinative of a defendant's ability to form intent, *People v. Knedler*, 2014 CO 28, ¶¶ 22-23 (holding that the defendant knowingly and intelligently waived his *Miranda* rights because, while a "breath test of .284 suggests extreme intoxication," "[t]he ability to function after consuming large amounts of alcohol varies on an individual basis" and breath alcohol content alone is insufficient to determine cognitive ability). Accordingly, had the trial court admitted the BAC evidence with no context, as Brown requested, it would have added minimal support, if any, for Brown's voluntary intoxication defense. *See Martinez*, ¶ 57 (holding any error was harmless where excluded evidence "provide[d] little insight into the degree of [the defendant's] alleged intoxication" and was "more attenuated" than admitted evidence of voluntary intoxication).

¶ 23     For these reasons, we cannot say that the exclusion of the BAC evidence, even if erroneous, substantially influenced the

verdict or affected the fairness of the trial proceedings. *See People v. Brown*, 2014 COA 155M-2, ¶ 16 (concluding no reversible error occurred where the defendant "was able to present to the jury most of the evidence underlying his contention that the police investigation was deficient and to argue the purported inadequacy in closing").

### III.   Challenges to Sufficiency of the Evidence

¶ 24    Brown's remaining arguments concern the sufficiency of the evidence to sustain his convictions for second degree assault of a police officer and obstructing a peace officer.

### A.   Standard of Review

¶ 25    On a challenge to the sufficiency of the evidence, we review the record de novo to determine whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a rational jury that the defendant is guilty beyond a reasonable doubt. *Johnson v. People*, 2023 CO 7, ¶ 13.

¶ 26    In conducting our review, we adhere to certain well-settled principles: it is the jury's role to evaluate the credibility of the witnesses, determine the weight to give evidence, and resolve

conflicts or inconsistencies in the evidence. *People v. Poe*, 2012 COA 166, ¶ 14. We do not serve as a "thirteenth juror" to second-guess findings that are supported by the evidence, *Thomas v. People*, 2021 CO 84, ¶ 10 (citation omitted), or substitute our judgment for that of the jury, *People v. Strickler*, 2022 COA 1, ¶ 11. Our role is to determine whether the prosecution has satisfied its burden to present sufficient evidence to prove beyond a reasonable doubt every element of the charged offense. *Thomas*, ¶ 10.

### B. Second Degree Assault Conviction

¶ 27 A person commits second degree assault on a peace officer if, "[w]ith intent to prevent one whom he or she knows, or should know, to be a peace officer . . . from performing a lawful duty, he or she intentionally causes bodily injury to any person." § 18-3-203(1)(c), C.R.S. 2025.

¶ 28 Brown acknowledges that he caused bodily injury to Officer Noble. But he argues that his extreme level of intoxication rendered him unable to form the requisite intent to cause the injury.

¶ 29 It was undisputed that Brown was very drunk during his encounter with the police. But that fact alone does not preclude a finding that he formed the specific intent to injure Officer Noble.

¶ 30    The evidence showed that, as officers wheeled Brown out of the hospital to the patrol car, Brown said, "You mother fuckers will have to carry me," and "You're police.  Carry that, you bitch."  At the car, while officers discussed how to load Brown into the back seat, he taunted them with comments like, "You know how this goes," "C'mon bitch," and "Let's go."  Right before Brown kicked his feet into Officer Noble's chest, he said, "Come on, cupcake," and after the contact, he told the officer, "Fuck you, bitch."

¶ 31    "An actor's state of mind is normally not subject to direct proof and must be inferred from his or her actions and the circumstances surrounding the occurrence." *People v. Phillips*, 219 P.3d 798, 800 (Colo. App. 2009).  Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational jury could have inferred from Brown's conduct that, despite his intoxication, he acted with the specific intent to cause bodily injury to Officer Noble.

¶ 32    The jury could have found, consistent with Brown's argument on appeal, that the extension of his legs into Officer Noble's chest was a reflexive response to being pulled into the patrol car.  And it could have found that his combative statements towards the officers were evidence of intoxication, not intent to harm.  That

11

might be one reasonable view of the evidence, but, as we have noted, it is not the only one. And "where reasonable minds could differ," the evidence is sufficient to sustain the conviction. *People v. Yeadon*, 2018 COA 104, ¶ 21, *aff'd*, 2020 CO 38. Brown's argument amounts to a request for us to reweigh evidence and the inferences to be drawn from it. But it is the jury's role, not ours, to determine whether the evidence weighs more heavily in favor of the prosecution or the defense. *Poe*, ¶ 14.

¶ 33    Because the evidence was sufficient to support the second degree assault conviction, we may not disturb the verdict.

### C.    Obstruction Conviction

¶ 34    A person commits obstructing a peace officer "when, by using or threatening to use violence, force, physical interference, or an obstacle, such person knowingly obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer, acting under color of his or her official authority." § 18-8-104(1)(a), C.R.S. 2025. In determining whether sufficient evidence exists to support a conviction for obstructing a peace officer, we look at the totality of the circumstances. *Dempsey v. People*, 117 P.3d 800, 812 (Colo. 2005).

12

¶ 35    To be convicted of obstruction, the defendant's conduct must be of "sufficient magnitude" to actually obstruct, impair, or hinder the officers' performance of their duties. *Id.* at 810. Brown argues that his conduct was not of sufficient magnitude to constitute physical interference that impaired or hindered the officers in their enforcement of the law.

¶ 36    Brown did not use or threaten the use of violence, force, or an obstacle to obstruct the officers. And his belligerence and general unpleasantness is not alone sufficient to support the conviction because "mere[] verbal opposition" does not amount to obstruction. *Id.* at 810-11.

¶ 37    But we think that a rational jury could have found that Brown physically interfered with the officers' performance of their official duties and thereby hindered their efforts to enforce the law. Brown does not dispute that the officers had a lawful basis to arrest and transport him to the local jail. *See id.* at 812 (an essential element of obstruction is that the officers were engaged in the enforcement of the penal law). Rather than complying with the officers' commands, though, Brown first attempted to walk away, then, when the police stopped him and attempted to effectuate an arrest,

13

he tensed his arms, interfering with their ability to apply handcuffs. After his arrest, he refused to stand or walk down the stairs, requiring officers to carry him, and he refused to get in or out of the patrol car at the hospital and police station. One of the officers testified that Brown's refusal to cooperate "made everything difficult."

¶ 38 In *Dempsey*, the supreme court affirmed the defendant's obstruction conviction based on evidence that the defendant, after being contacted by officers, refused to provide his identification so that the officers could issue him a summons for disrupting a rally; repeatedly asked to speak with his lawyer; walked away from the officers and placed his hands in his pockets in a manner that the officers found threatening; and struggled with officers after they initiated physical contact. *Id.* at 812-13.

¶ 39 Because Brown's conduct was at least of equivalent magnitude to that of the defendant in *Dempsey*, we conclude that the evidence was sufficient to sustain the conviction. A reasonable jury could have found that Brown's physical interference hindered or impaired the officers' enforcement of the law by delaying the process of Brown's arrest and transport.

14

## IV.    Disposition

¶ 40    The judgment is affirmed.

JUDGE SCHOCK and JUDGE BERGER concur.